In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-2359

JOANNE TEAL,

*Plaintiff-Appellant,*

*v.*

JOHN E. POTTER, Postmaster General,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04-C-1067—**John A. Gorman,** *Magistrate Judge.*

ARGUED FEBRUARY 29, 2008—DECIDED MARCH 20, 2009

Before POSNER, ROVNER, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* In this case brought by Joanne Teal under 29 U.S.C § 794 (the "Rehabilitation Act"), Teal contends that her employer, the United States Postal Service, improperly terminated her based on her depression and failed to provide her with a reasonable accommodation. The district court awarded summary judgment in favor of the Postal Service after finding that Teal failed to exhaust her administrative remedies, that she

additionally failed to show that she was a "qualified person" under the Rehabilitation Act, and that she was not discharged as a result of her disability. We determine that because Teal did not exhaust the administrative remedies available to her, the proper disposition of this case requires a remand to the district court with instructions to dismiss the case without prejudice for failure to exhaust administrative remedies.

## Background

Teal's employment with the U.S. Postal Service began in 1983. In February 2002, Teal was involved in an altercation with her supervisor, Patricia Dittmer, during which Teal struck Dittmer's hand. As a result, on March 24, 2002, the Postal Service issued Teal a Notice of Removal. With the help of her union representative, Teal filed a grievance and on October 22, 2002, an arbitrator determined that although discipline was warranted, Teal should be suspended without pay rather than terminated. Teal's reinstatement was to be conditioned on the determination by a physician chosen by the Postal Service and a board-certified psychiatrist that she was physically and mentally fit to resume her duties.

Teal's fitness for duty examination originally was scheduled for November 21, 2002. On October 30, 2002, Steve Grieser, the Postal Service's Labor Relations Specialist, sent Teal a medical release form for her completion along with a letter explaining that the form would allow the Postal Service physician to obtain the necessary medical records for Teal's impending examination. On

November 7, 2002, notice of the scheduled appointment was sent to Teal. There was no response to either communication and the November 21 examination was cancelled.

On November 25, 2002, Grieser sent another letter and another medical release form to Teal giving Teal 10 days to provide the necessary information. There was much back-and-forth with Teal's then-attorney concerning the forms and their scope, and during which Grieser specifically noted that failure to comply with the arbitrator's decision would preclude Teal from reinstatement. On December 12, 2002, Grieser sent a letter stating that if Teal failed to provide the necessary information within 5 days of the receipt of the letter, her employment would be terminated. On December 17, 2002, Teal faxed a completed release to Grieser.

On January 14, 2003, Cynthia Kellogg, a Postal Service Human Resources Department employee, sent Teal a letter scheduling her fitness for duty examination in Chicago on February 13, 2003. On January 17, Teal called Grieser to tell him that her car was not working and requesting transportation arrangements. On January 23, Grieser sent Teal a letter confirming that she would have a Postal Service car at her disposal to drive to Chicago for her February 13 examination.

On January 29, 2003, Teal sent a letter to the Postal Service in Chicago in which she wrote that she had started taking medication and did not feel it would be safe to drive a company car to Chicago on February 13. She included a January 16, 2003 letter from Dr. Powers,

her family physician, requesting that the fitness exam-
ination be postponed because of Teal's pain and suffering.
Teal did not send a copy of her letter, or its enclosures,
to Grieser. Nor had she mentioned Dr. Powers' letter,
or the substance of its contents, during the phone con-
versation she had with Grieser on January 17. The Feb-
ruary 13 fitness for duty examination was cancelled.

On May 6, 2003, Teal sent a letter to Grieser re-
questing a fitness for duty examination, asking that she
be provided with train transportation and that it be
scheduled for a Thursday or Friday. Grieser responded
with a May 9 letter explaining that because of Powers'
earlier letter expressing Teal's inability to undergo the
examination, Teal now would have to provide medical
documentation that she was being released for the exami-
nation. On May 28, 2003, Grieser received a letter from
Dr. Powers which opined that Teal was suffering from
depression and that it would be in her best interests to
be returned to work at another station. Deeming this
insufficient, Grieser sent Teal a letter on July 17, 2003
outlining the history since the arbitrator's award, caution-
ing her that failure to submit to the examination would
preclude reinstatement and requesting a medical release
for the examination within 5 days.

On July 23, Teal's deadline to provide the information,
Grieser received a call from a Congressman's office re-
questing a few more days for Teal to provide the re-
lease. Grieser replied that Teal had until the close of
business on Friday, July 25. Grieser did not receive the
release by this time. On Monday, July 28, Grieser met with

a union representative who said Teal had the release and would get it to him right away. Grieser agreed to wait until the next morning, but received neither letter nor fax from Teal on July 29. On that date, he wrote a letter to Teal informing her that her employment with the Postal Service was terminated for failing to comply with the arbitrator's requirements. On July 30, Teal provided Grieser with a script from Dr. Powers, dated July 28, which stated that Teal was released to take the fitness to duty exam and requesting that she be reinstated to a different station. At that point, Grieser had already sent the termination to Teal and lacked the authority to rehire someone who had been discharged.

### Teal's Administrative Filings

In late January 2003, Teal filed a claim with the EEOC on the grounds that, *inter alia*, she had been wrongfully terminated in March 2002 for hitting Dittmer's hand. As for the types of discrimination that formed the basis for her suit, Teal checked the boxes for "age," "retaliation," and "disability—mental." The Postal Service issued a Final Agency Decision on May 23, 2003 dismissing all the charges. *See Smith v. Potter*, 445 F.3d 1000, 1002 n.1 (7th Cir. 2006) (noting that the Postal Service, like other federal agencies, is charged with the initial disposition of discrimination complaints lodged against the agency by its employees, *see* 39 C.F.R. § 255.6; 29 C.F.R. §§ 1614.101 et seq., and that employees then have the right to appeal that determination to the EEOC or file a complaint in federal court). Teal appealed this decision to the EEOC

which, in a December 2, 2003 decision, affirmed the dismissal. The EEOC clarified the issues raised by Teal as follows: (1) from March 2002 through December 2002, supervisors published information regarding Teal's mental health condition; (2) on March 24, 2002, Teal was issued a wrongful termination; (3) management and union created a hostile work environment; and (4) on December 17, 2001, Teal's workers compensation was denied. The EEOC based its decision on the fact that the claim (1) failed to state a claim under the EEOC regulations because Teal failed to show that she suffered harm or loss for which there is a remedy; and that claims (2)-(4) involved the same claims as those raised in a prior (September 20, 2002) complaint filed by Teal. Although it is not entirely clear from the record, it appears that apart from attempting to re-raise the claim in her January 2003 EEOC complaint, Teal failed to take any further action with respect to her September 2002 complaint. The EEOC decision made no mention of Teal's July 2003 dismissal. Teal did not subsequently file any other EEOC complaint.

## Analysis

Teal alleges that the district court improperly granted summary judgment to the Postal Service. We review the district court's decision de novo and we construe all reasonable inferences in Teal's favor. *See Lucas v. PyraMax Bank, FSB,* 539 F.3d 661, 666 (7th Cir. 2008); *Gates v. Caterpillar*, 513 F.3d 680, 685-86 (7th Cir. 2008).

Under the Rehabilitation Act, federal agencies are prohibited from discriminating on the basis on an individ-

ual's disability. 29 U.S.C. § 794; 39 C.F.R. § 255.5. Individuals who have suffered discrimination can seek relief pursuant to the procedures and requirements outlined in Title VII of the Civil Rights Act, which include exhausting administrative remedies prior to bringing suit. 29 U.S.C. § 794a(a)(1). Exhaustion is not a jurisdictional issue, but a condition precedent to bringing a claim under the Act (*e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985)) and plaintiffs who have not exhausted their administrative remedies have prematurely brought their claims into the courts. Moreover, "[a]s a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (*citing Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)); *see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination"). The purpose of this requirement is twofold: to promote resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them. *See Cheek*, 31 F.3d at 500 ("allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge"); *Rush*, 966 F.2d at 1110.

In order to further the goals of Title VII and given the fact that laypersons rather than lawyers usually are the

ones initiating these charges, "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek*, 31 F.3d at 500 (*citing Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992)). In this case, Teal was represented by counsel who filed the EEOC complaint on Teal's behalf. Although this weakens the argument for liberal construction in this case, for the reasons discussed *infra*, even a liberal construction does not save Teal's claim. S*ee Rush*, 966 F.2d at 1112 (it is not unreasonable to require additional specificity or detail when plaintiff was advised by attorney at time of filing charge with EEOC). In addition to those claims which were previously charged, Title VII plaintiffs may also litigate claims which are "like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc) (citation omitted). *See also McKenzie v. Illinois Dep't. of Trans.*, 92 F.3d 473, 481 (7th Cir. 1996); *Taylor*, 966 F.2d at 1195-96. This standard is a liberal one (*see Babrocky*, 773 F.2d at 864), and is satisfied if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation. *Cheek*, 31 F.3d at 500.

There is obviously no mention of the July 2003 dismissal in Teal's January 2003 EEOC complaint. The question, then, is to what extent, if at all, the allegations in this case are related to those Teal raised before the EEOC. Factually, there is almost nothing to tie Teal's

January 2003 EEOC complaint to the claims in this suit. That complaint centered on alleged discrimination occurring between March and December 2002 and Teal's March 2002 termination. This appeal hinges on the allegation that Grieser illegally terminated Teal's employment in July 2003. Teal does not appeal the district court's summary judgment ruling as to her retaliation claim. Although both the EEOC complaint and this lawsuit allege unlawful terminations, on their face they are not reasonably related. *See Cheek*, 31 F.3d at 501 ("Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination."). This Circuit has held that in order for claims to be deemed related, "the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* (emphasis in original). Teal cannot satisfy this requirement. First, as the facts outlined above make clear, Teal's July 2003 dismissal was based on Teal's noncompliance. As such, it was an act entirely different, separate and distinct from the March 2002 dismissal which was based on the hand-hitting incident with Patricia Dittmer. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000) (employer's decision to terminate was separate and distinct act from subsequent decision not to rehire and thus not "reasonably related"); *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000) (sexual harassment claim in lawsuit wholly diverse from disparate treatment charge before EEOC). Moreover,

the first page of Teal's EEOC complaint (which in total is over ten typed pages, most of them single-spaced) alleges that the discriminatory conduct took place from "3/1/02 - 12/10/02 and continuing" and identifies Grieser as one of the individuals (along with Patricia Dittmer) responsible for the discriminatory conduct, alleging that Teal was "threatened and forced by Mr. Grieser to supply psychiatric information that was irrelevant to the charge." R.29, exh. A. Yet in the body of the complaint, there is never an explanation of which "charge" Teal was referring to, no discussion of how Grieser's conduct constituted discrimination, and no allegations of any conduct beyond 2002. In fact, Grieser is not mentioned anywhere else in the complaint. The scope of the EEOC's investigation was defined by Teal in her complaint; it would be unreasonable to conclude that the agency would have discovered the July 2003 discharge based on this single, vague and unsupported sentence.

That Teal's complaint alleged the discrimination dates as "3/1/02 - 12/10/02 and continuing" (R.29, exh. A) does not change the analysis. To conclude otherwise would allow the entire purpose of the exhaustion requirement to be thwarted whenever a complainant included similar language without factual evidence. At bottom, the January 2003 EEOC complaint did not provide the Postal Service with notice that Teal felt aggrieved by the July termination.

It is clear that the dual purposes of the exhaustion requirement would be frustrated by allowing Teal now to proceed with her claim. Teal should have initiated an additional EEOC complaint after her July termination in

order to properly allow the agency to try to resolve the matter and fulfill its obligation to investigate the facts and circumstances related to the July dismissal.

Because this case is not properly before us on the merits, we do not address the additional issues Teal raises in appeal: namely, whether Teal is a qualified disabled person under the Rehabilitation Act or whether the Postal Service failed to accommodate Teal. That said, however, it is worth noting that the facts of this case leave little room for a conclusion other than that Teal was terminated because of her noncompliance with the arbitration order. For nine months the Postal Service gave Teal opportunity after opportunity to present herself, with the necessary releases, for her fitness to duty examination. They rescheduled, extended deadlines and provided transportation. Nothing in the record indicates that Teal's disability either affected her non-compliance or played any role in the Postal Service's termination of her employment.

Because Teal failed to exhaust administrative remedies, her complaint must be dismissed without prejudice. *See McGuinness v. United States Postal Service*, 744 F.2d 1318, 1321 (7th Cir. 1984) (in postal worker suit for discrim-ination, holding that "as it is not certain that it is too late for McGuinness to obtain administrative consider-ation of his claim, the suit must be dismissed not as untimely but as premature, without prejudice to his bringing a new suit if and when he exhausts his adminis-trative remedies."); *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) (proper resolution for failing to exhaust adminis-

trative remedies is dismissal without prejudice); *see also Boos v. Runyon*, 201 F.3d 178, 184 (2d Cir. 2000) (failure of postal worker suing under the Rehabilitation Act to exhaust administrative remedies would require dismissal without prejudice). For the foregoing reasons, the district court's judgment is VACATED and this case is REMANDED to the district court with instructions to dismiss the case without prejudice. Each party shall bear their own costs.