In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2426

PRISCILLA L. CONNERS,

*Plaintiff-Appellant,*

*v.*

ROBERT WILKIE,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-CV-5623 — **John J. Tharp, Jr.**, *Judge.*

ARGUED FEBRUARY 14, 2020 — DECIDED JANUARY 14, 2021

Before SYKES, *Chief Judge*, and RIPPLE and SCUDDER, *Circuit Judges*.

SYKES, *Chief Judge.* Priscilla Conners worked as a licensed practical nurse ("LPN") at a healthcare center operated by the U.S. Department of Veterans Affairs, where her duties included treating and observing patients, giving immunizations, managing the front desk, teaching classes, and filling out paperwork. In October 2011 she was hit by a car and suffered severe injuries that seriously impeded her ability to

perform most of her nursing duties. Her supervisor initially permitted her to retain her LPN position but radically reduced her responsibilities to only teaching and paperwork. After more than two years in that status, the VA concluded that Conners could not perform the essential duties of an LPN even with reasonable accommodations and attempted to work with her on an acceptable reassignment. Those efforts failed. In January 2014 the VA terminated her employment.

Conners sued the Secretary of the VA alleging that the agency violated her rights under the Rehabilitation Act by failing to accommodate her disability, retaliating against her, and subjecting her to a hostile work environment based on her disability. On cross-motions for summary judgment, the district court entered judgment for the Secretary on all claims.

Only the accommodation claim is at issue on appeal. The threshold element requires Conners to prove that she was a "qualified individual with a disability" when she was fired—that is, that she was capable of performing the essential functions of an LPN with or without a reasonable accommodation. The evidence does not support a finding in her favor on that element. We affirm the judgment.

## I. Background

In 2006 Conners began work as an LPN at the Red Rover Clinic at the Captain James A. Lovell Federal Health Care Center, a VA-operated facility north of Chicago. In that capacity she had the following general duties: treating and observing patients, administering immunizations, supervising corpsmen who helped with immunizations, managing

the front desk, teaching classes, and filling out paperwork. She also was expected to respond to medical emergencies. The job description required her to "have the physical ability to perform job-related duties which require lifting, standing, bending, transferring, stooping, stretching, walking, pushing, or pulling without assistance from another patient care provider."

In October 2011 Conners was hit by a car as she was crossing the street. She sustained severe injuries: fractures in her skull, pelvis, and sacrum, as well as compound leg fractures. Her injuries required surgery, and she was absent from work for more than six months while she recuperated.

Conners returned to work on April 30, 2012, with many physical limitations. She submitted a note from her doctor describing her required restrictions:

> Upon return, she is able to work 4 hours per day for the first 6 weeks. Then she can increase her hours to 6 hours per day for 6 weeks. Then she can increase to full time. She is not able to lift objects over 20 pounds. She is not able to climb, run, bend, squat or jump. She cannot perform prolonged sitting or walking. She needs to have the ability to change position after about 15 minutes. She will need to be able to elevate her leg as needed. She needs to avoid loud noises. Lastly, she will require at least four medical visits per month for the next few months.

Conners's return to work did not last long. On her second day back, she went to the hospital emergency room because

of a broken screw in a rod in her left leg. This required a second surgery that kept her off work until June 2012. When she returned, she submitted another doctor's note explaining that her physical limitations had not changed but she could now work full time.

When Conners returned to work in June, the impact of her limitations became obvious. She could not treat and observe patients, give immunizations, manage the front desk, or respond to medical emergencies. Nurse Manager Mary Bailey, her supervisor, relieved Conners of most of her responsibilities and limited her duties to teaching and completing paperwork.

The VA took no other action in response to Conners's disability until March 2013. In the meantime, Conners sent Nurse Bailey numerous medical reports and recommendations from her doctor describing her continued physical limitations. Bailey did not forward any of this information to an accommodation coordinator—the officials at the VA who are responsible for determining whether and how to accommodate or reassign an employee with a disability.

By late March upper management at the healthcare center learned the full impact of Conners's disability on her job performance and directed her to contact Eric Strong, an accommodation coordinator, to fill out a formal accommodation request. Conners requested five specific accommodations: (1) a private office, which she said was necessary due to her posttraumatic stress disorder and chronic pain; (2) the option to elevate her leg for 15–20 minute intervals every one to two hours; (3) a footstool; (4) no standing for more than 10–15 minutes at one time; and (5) a walking limitation of no more than 25 yards except when absolutely necessary.

The VA agreed to provide a footstool but could not grant the other accommodations because a major part of an LPN's responsibilities involved seeing patients and administering and supervising immunizations, which require extended standing and walking. The VA noted that Nurse Bailey had on her own initiative limited Conners's duties to teaching classes, but even those duties required her to walk more than 25 yards at times. Conners responded by filing an administrative complaint with the VA's Office of Resolution Management alleging that the VA had failed to accommodate her disability.

In June 2013 the VA concluded that Conners was unable to perform the essential functions of an LPN and gave her notice of that determination, though it left open the possibility of reassignment if a different position could be found that fit her qualifications and physical limitations. The VA asked her to fill out a form describing her limitations and the jobs she was qualified to perform and would be willing to accept. The form also asked if she was willing to relocate outside her current facility or commuting area and, if so, to list particular locations (or say whether she was willing to be reassigned to any location). Conners responded, saying only that 90% of her current duties were clerical or supervisory and listing Mesa, Arizona, as the lone possible transfer location. A portion of the form's certification section read: "I understand that if [the] VA cannot find a suitable position, the agency has no further obligation to accommodate me." Conners crossed out that sentence.

Strong, the accommodations coordinator, asked Conners to resubmit the form because it was against VA policy to permit an employee to customize the form by crossing out a

portion of the certification. Conners did not comply with this request.

Months went by without further action by either Conners or the VA. In October 2013 Conners submitted a second reassignment form, this time listing Hot Springs, Arkansas, as the only location outside her current commuting area to which she was willing to relocate. The remainder of her responses were identical to those on the form she submitted in June, and she again crossed out the same portion of the certification.

Despite the nonconforming certification, the VA contacted healthcare administrators at VA facilities in both Hot Springs and Phoenix to see if they had any vacant LPN positions that could accommodate Conners's requests. Both responded that they had no open LPN positions that were compatible with Conners's requested accommodations.

In November the VA explained to Conners that no available LPN position could accommodate her limitations and gave her three options: (1) reassignment to a different job— i.e., not a nursing position—that was compatible with her qualifications and limitations; (2) medical-disability retirement; or (3) termination from her LPN position. Conners responded: "I am going to continue my duties in my current position with reasonable accommodations. I am gainfully employed as a nurse with my reasonable accommodations."

The VA informed Conners that retaining her current position as an LPN was not an option: "As an LPN in this work center, there are professional and physical responsibilities that are simply not being met." The VA again explained the three options available to her. She could seek reassignment

to a different position, which would require an up-to-date résumé and a formal reevaluation of her qualifications. Alternatively, she could seek medical-disability retirement. Finally, if reassignment wasn't viable and she declined disability retirement, the VA would terminate her employment because she was unable to perform the essential duties of an LPN even with reasonable accommodations.

Conners declined to pursue the first two options, so in January 2014 the VA sent her a notice of proposed removal. The notice explained that the VA was planning to terminate her employment because she was unable to perform the essential duties of her LPN position and to maintain a regular work schedule. The VA informed Conners that between December 1, 2011, and December 11, 2013, she had missed the equivalent of 304 full workdays due to the prolonged leaves of absence compelled by her numerous surgeries. The VA gave her 14 days to contest the proposed action; if she did not do so, her employment would be terminated. Conners did not respond within the allotted time, so the VA terminated her employment.

In April 2014 Conners filed a second administrative complaint with the VA. This time she challenged the termination of her employment as both discriminatory and retaliatory in violation of the Rehabilitation Act. She also alleged that her subordinates and coworkers had harassed her, creating a hostile work environment. In May 2015 the VA dismissed both administrative complaints.

Conners then sued the VA Secretary in his official capacity alleging that the agency violated the Rehabilitation Act by failing to reasonably accommodate her disability, retaliating against her, and subjecting her to a hostile work environ-

ment. *See* 29 U.S.C. § 794. A suit against the Secretary in his official capacity is a suit against the agency itself, so for simplicity we refer to the VA as the defendant. Following lengthy discovery, Conners sought summary judgment on her claim for failure to accommodate, and the VA cross-moved for summary judgment on all claims.

The judge ruled for the VA across the board. Regarding the failure-to-accommodate claim, the judge explained that Conners had not offered any evidence that she was a "qualified individual with a disability," which is an essential element of the claim. Conners did not address the retaliation and hostile-environment claims in her response to the VA's motion, so the judge deemed them abandoned. For completeness, however, the judge noted that the summary-judgment record did not support a claim for retaliation or a hostile work environment, so the VA was entitled to judgment as a matter of law. The judge entered judgment for the VA on all three claims, and Conners appealed.

## II. Discussion

Conners does not challenge the judge's conclusion that she abandoned her retaliation and hostile-environment claims, so we limit our review to her claim that the VA failed to accommodate her disability. We give the factual record a fresh look, construing the evidence and drawing all reasonable inferences in her favor. *Lavallee v. Med-1 Sols., LLC*, 932 F.3d 1049, 1054 (7th Cir. 2019).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be

subjected to discrimination … under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). The Rehabilitation Act expressly incorporates the liability standards of the Americans with Disabilities Act of 1990 ("ADA"), *id.* § 794(d), with one notable exception. The Rehabilitation Act has a stricter causation requirement: the plaintiff's disability must be the *sole* reason for the alleged discriminatory action; this contrasts with the ADA, which requires only that the plaintiff's disability be *a* reason for the challenged action. *Compare* § 794(a) *with* 42 U.S.C. § 12132. *See also Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). As we shall see, however, causation is not at issue here. The claim suffers from factual deficits earlier in the legal framework.

An employer covered by the ADA or the Rehabilitation Act may be liable for disability discrimination if it fails to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," *unless* the employer can show that "the accommodation would impose an undue hardship on the operation of the [employer's] business." 42 U.S.C. § 12112(b)(5)(A). The duty to reasonably accommodate a disabled employee may require a reassignment to a vacant position. *Id.* § 12111(9)(B).

In line with the statutory language, the elements of a claim for failure to accommodate an employee's disability are: (1) the employee was a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). If the plaintiff establishes these elements of the prima

facie case, the burden shifts to the employer to prove that the requested accommodation would impose an undue hardship. *Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 850 (7th Cir. 2019).

Conners runs into evidentiary trouble on the first element: whether she was a qualified individual with a disability. The ADA defines a "qualified individual" as

> an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).

Applying this definition typically entails a two-step inquiry. The first step asks whether the plaintiff has the basic qualifications required for the position, such as educational prerequisites, employment experience, skills, or licenses. *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241–42 (7th Cir. 2018). The second step asks whether the plaintiff can perform the essential functions of the job with or without reasonable accommodations. *Id.* To determine whether a job duty is an essential function of the position, "we consider the employer's judgment, the employee's written job description, the amount of time the employee spends performing

that function, the consequences of not requiring the employee to perform the function, and the experiences of past and current workers." *Id.* at 242.

It's undisputed that Conners satisfied the basic prerequisites for the position—she was an LPN, after all, and had performed the job satisfactorily for several years before her disabling accident. The only question is whether she could perform the essential functions of the LPN position with or without accommodations when the VA made its decision to let her go.

According to the job description, the VA requires its LPNs to treat and observe patients, assist in medical emergencies, and to "have the physical ability to perform job-related duties which require lifting, standing, bending, transferring, stooping, stretching, walking, pushing, or pulling without assistance from another patient care provider." In addition, the undisputed evidence shows that prior to her accident, Conners's job duties also included administering immunizations, supervising corpsmen who helped with immunizations, and managing the front desk.

Conners's physical limitations stemming from her 2011 accident prevented her from performing most of these responsibilities. The restrictions on her ability to endure sustained periods of standing or to walk more than 25 yards at a time made it impossible for her to treat and observe patients, respond to medical emergencies, give immunizations, or manage the front desk. More generally, her limitations were incompatible with the physical requirements outlined in her job description. The VA considered these functions and responsibilities essential, and "[w]e presume that an employer's understanding of the essential functions

of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Gratzl v. Office of Chief Judges of 12th, 18th, 19th & 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010). Conners offered no evidence to rebut this presumption.

Conners emphasizes that she was able to perform a reduced set of duties after the accident—namely, teaching and paperwork. This evidence, she says, demonstrates that she was capable of performing the essential functions of an LPN despite her physical limitations. This argument fails for two reasons. First, the fact that Nurse Bailey permitted many of Conners's job duties to go unperformed does not mean those duties were not essential functions of an LPN. "An employer need not create a new job or strip a current job of its principal duties to accommodate a disabled employee." *Id.* at 680.

Second, the argument seems to rest on the premise that Nurse Bailey's decision to reduce Conners's responsibilities means that altering the normal requirements of an LPN was not an undue hardship on the VA. But the undue-hardship inquiry has no role to play in the threshold analysis of whether Conners was qualified to perform the essential functions of her job as an LPN. Undue hardship is a defense and does not come into play until Conners establishes her prima facie case. If she had produced evidence showing that she was capable of performing the essential functions of an LPN with some particular accommodation, then the VA would have an opportunity to demonstrate that the requested accommodation would create an undue hardship on its operations. But Conners offered no such evidence. To the contrary, the undisputed evidence shows that it was impossible for her to perform the essential duties of an LPN even

with accommodations. There is no need to address the question of undue hardship.

Though she was not qualified to perform her job as an LPN, Conners had the option to show that she was qualified to perform the essential functions of another vacant position at the VA. *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017). This too is part of a plaintiff's prima facie case, so it was her burden to prove that there was a vacant position for which she was qualified. *Id.*; *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997). She hasn't carried this burden. She offered no evidence that she could perform the essential functions of any vacant position at the VA, so a reasonable jury could not conclude that the VA discriminated against her by failing to reassign her.

Finally, Conners argues that the VA failed to engage in the interactive process to identify reasonable accommodations for her disability. *Sansone v. Brennan*, 917 F.3d 975, 979–80 (7th Cir. 2019). Setting aside the dearth of evidence for this contention, Conners cannot show that she was qualified to perform her LPN job with accommodations, so any failure to engage in the interactive process is irrelevant. *See Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 293 (7th Cir. 2015). And because the interactive process is not an end in itself, we have repeatedly held that the mere failure to engage in the process cannot give rise to a claim for relief. *Sansone*, 917 F.3d at 980; *Stern*, 788 F.3d at 292; *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001).

AFFIRMED