In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 21-2938

GERALD SWAIN,

*Plaintiff-Appellant,*

*v.*

CHRISTINE WORMUTH, Secretary of the Army,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:20-cv-04143 — **Sara Darrow**, *Chief Judge.*

———————————

ARGUED MAY 18, 2022 — DECIDED JULY 25, 2022

———————————

Before HAMILTON, BRENNAN, and KIRSCH, *Circuit Judges.*

BRENNAN, *Circuit Judge.* As a civilian employee for the
United States Army, Gerald Swain received several accommo-
dations for his physical limitations. He nevertheless sued the
Army under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, al-
leging disability discrimination in two forms: failure to ac-
commodate and disparate treatment. The district court
granted summary judgment to the Army on both claims. We
affirm.

**I**

Gerald Swain worked as a civilian employee at the Rock Island Arsenal, an Army installation in Illinois that employs over 6,000 personnel and is "home to more than 80 tenant organizations that provide critical products and services to [the U.S. military]." *U.S. Army Garrison Rock Island Arsenal*, https://home.army.mil/ria/ (last visited July 25, 2022). Swain worked at the Joint Manufacturing and Technology Center, a "vertically integrated metal manufacturing facility." *About RIA-JMTC*, https://ria-jmtc.army.mil/ (last visited July 25, 2022).

Swain was a machinist until 2014, when he suffered a shoulder injury. His doctor ordered him not to push or pull more than two times per hour and to use only his right hand for opening and closing doors. The Army accommodated this restriction by offering Swain a temporary light-duty assignment that involved observing operations and reporting his findings to a supervisor. Later that year, the Army offered Swain a permanent light-duty assignment as a tool attendant, with pay retention. Swain accepted the job.

Swain's first day of work did not go as planned. Because he underwent carpal tunnel surgery three days earlier, he was unable to use his right hand. Given this medical restriction, Swain complained to his supervisor about the weight of certain tool drawers he needed to open. His supervisor then directed other employees to weigh each drawer and mark that drawer with its weight. If a drawer weighed more than eight pounds, it was to be stamped with a label reading "Caution Heavy Drawer." Swain's supervisor assured Swain he would not need to open any unmarked drawer.

Several months later, Swain was diagnosed with a hernia. His doctors ordered a ten-pound weight restriction and recommended that he avoid lifting objects below his waist, climbing, working above shoulder height, and operating machinery. Swain and his supervisors concluded that he could not perform his duties with those restrictions. They agreed to a significant modification in Swain's work responsibilities: he would travel between cost centers "driving an[] electric car and perform[ing] inventory check[s]."

Swain asked for and received additional accommodations between 2014 and 2016. For example, within two months of his request, the Army provided Swain with a new scale to weigh items before he lifted them. And when Swain's doctor recommended that Swain have access to a personal, motorized cart with power steering, the Army procured one for him within two months.

Most relevant to this appeal are Swain's requests for automatic door openers. In November 2014, he requested an opener for the "tool setting door." About two months later, after noticing that work on the door opener had not begun, Swain renewed his request. Per management's instruction, Swain filled out reasonable-accommodation paperwork in which he made an additional request for an automatic door opener on the "double hallway doors in Building 210." His supervisor approved the installation of an opener on the tool-setting door, but not the double hallway doors, because he believed those doors required less than ten pounds of force (Swain's weight restriction) to open. As an alternative, Swain's supervisor approved an automatic opener on a different door that led to a men's restroom. In October 2015, the chief of plant engineering learned that these openers were

approved. They were installed by August 2016, which is also when Swain claims he learned for the first time that his supervisor did not approve an opener on the double hallway doors.

Swain also took issue with the Army's assignment of overtime. Under the applicable collective bargaining agreement, employees must be considered for overtime if their medical restrictions can be accommodated. Overtime became available for tool attendants in January 2017, but the Army did not immediately consider Swain because it believed his medical restrictions precluded him from completing the work. Unhappy with that result, Swain acquired a doctor's note clearing him for overtime labor. Going forward, the Army assigned him overtime.

Swain initiated a series of grievances with the Army's Equal Employment Opportunity counselor.[1] Beginning in 2014, he alleged disability discrimination, but he later withdrew that grievance. Then, in October 2016, Swain filed a formal complaint of discrimination against the Army for allegedly failing to accommodate him by installing, in a timely way, the automatic door opener he requested. After a coworker raised his voice at him, he filed another formal complaint in February 2017, but that complaint was dismissed for

---

[1] A federal employee who believes he has been subjected to disability discrimination must follow the same procedures applicable under Title VII. 29 U.S.C. § 794a; 29 C.F.R. § 1614.103(a). Under those procedures, an employee must first attempt to resolve the matter informally by initiating contact with his employer's Equal Employment Opportunity Counselor. 29 C.F.R. § 1614.105(a). If that effort fails, the employee may file a formal complaint "with the agency that allegedly discriminated against [him]." *Id.* § 1614.106(a). If the agency rules against the employee, he may file a civil action in federal district court. *Id.* § 1614.407(a).

failure to state a claim. Finally, in March 2018, Swain filed a formal complaint, alleging he was discriminated against based on his disability when he was not assigned overtime hours.

On June 24, 2020, Swain filed this lawsuit against the Army (via its Secretary), alleging failure to accommodate, disparate treatment, and retaliation under the Rehabilitation Act.[2] He requested backpay, compensatory damages, attorney's fees, and costs.

## II

Swain's claims flow from the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, … be subjected to discrimination … under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). The Rehabilitation Act expressly incorporates the standards and procedures applicable to claims brought

---

[2] The record does not indicate whether Swain exhausted administrative remedies—likely a requirement for Rehabilitation Act claims, though our case law has not been clear on the point. *Compare Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (observing that Rehabilitation Act plaintiffs "can seek relief pursuant to the procedures and requirements outlined in Title VII of the Civil Rights Act, which include exhausting administrative remedies prior to bringing suit."), *and Johnson v. Runyon*, 47 F.3d 911, 916 n.5 (7th Cir. 1995), *with Williams v. Milwaukee Health Servs., Inc.*, 732 F.3d 770, 770–71 (7th Cir. 2013) ("A seeker of relief under the Rehabilitation Act against a recipient of federal money is not required to exhaust the administrative remedies that the Act provides."). But this issue is not jurisdictional, *Teal*, 559 F.3d at 691, and the Army forfeited its opportunity to raise it as an affirmative defense. *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020).

under the Americans with Disabilities Act ("ADA"). *See id.* § 794(d).

Swain's opening brief failed to mention his retaliation claim (and he did not submit a reply brief), so we review only his failure-to-accommodate and disparate-treatment claims. *Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019) ("A party … generally forfeits issues and arguments it fails to raise in its initial appellate brief.").

## A

First, we address Swain's failure-to-accommodate claim. Under the ADA, an employer must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To prevail on his claim, Swain must show three things: he had "physical or mental limitations" known by the Army, he was "an otherwise qualified individual with a disability," and the Army failed to reasonably accommodate his limitations. *Id.*; *see also Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).

It is undisputed that the Army knew about Swain's physical limitations. And although the Army initially argued that Swain was not a qualified individual,[3] it failed to raise that argument on appeal. Whether the Army reasonably accommodated Swain, then, is the only issue we need to resolve.

---

[3] The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

For years, the Army accommodated changes in Swain's temporary and permanent physical limitations. When he injured his rotator cuff, the Army reassigned him to a light-duty job with pay retention. When he underwent carpal tunnel surgery, the Army marked every tool drawer's weight. When a hernia further limited his physical capabilities, the Army permitted him to focus on less demanding tasks, like inventory checks. When he asked for a new scale, the Army provided him one. When he requested a permanent motorized cart, the Army delivered it. And when he requested automatic door openers, the Army agreed as to one set, disagreed on the second, and installed an automatic opener on a different door as an alternative.

Swain's complaint disputes the Army's responsiveness to his requests for a new scale, motorized cart, and automatic door openers. But his brief discusses only the door openers, so we limit our review accordingly. *Scheidler*, 914 F.3d at 540.

Recall that Swain requested two doorways be fitted with automatic openers: the tool-setting door and the Building 210 double hallway doors. Although Swain's supervisor approved his request for the tool-setting door, the supervisor believed the double hallway doors were light enough that an automatic opener was not needed. As an alternative, he approved an automatic opener for a different door that led to a men's restroom. Swain asserts the Army unreasonably delayed installation of the automatic opener on the tool-setting door and had no legitimate reason for denying his request for an automatic opener on the double hallway doors.

As to delay, the timeline is important. Swain requested automatic door openers in November 2014, but the paperwork was not filled out until April 2015. The person responsible for

installing the devices learned that management had approved two sets of doors in October 2015. By August 2016, the openers were installed. Swain argues this was an unreasonable delay—one that constitutes a failure to accommodate. *See McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020) ("An unreasonable delay in providing an accommodation for an employee's known disability can amount to a failure to accommodate his disability that violates the Rehabilitation Act.").

Undoubtedly, there was a delay in getting the door openers installed. The question is whether it was reasonable. To answer that question, we look to the totality of the circumstances, "including, but not limited to, such factors as the employer's good faith in attempting to accommodate the disability, the length of the delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the employer offered alternative accommodations." *Id*.

As the Army points out, Swain needed to fill out paperwork, that paperwork needed to be reviewed, the doors needed to be inspected, parts needed to be ordered, and installation needed to be scheduled. Each step took a few months until the door openers were installed. Given the long list of accommodations the Army promptly provided for Swain, a reasonable juror could not attribute the delay to bad faith. As the district court noted, there is no evidence the Army purposely stalled the project. While the Army could have moved more quickly, given the steps necessary to initiate and then install automatic openers on these doors, a reasonable juror could not say the duration was unreasonable.

Also reasonable was the Army's decision not to install an opener on the double hallway doors. The ADA requires employers to make reasonable accommodations when doing so would enable the employee to perform the essential functions of the job. An employer may make an accommodation untethered to an essential function, but it is not required to do so. *Brumfield*, 735 F.3d at 632 ("[A]n employer need not accommodate a disability that is irrelevant to an employee's ability to perform the essential functions of her job."). As the district court observed, Swain failed to connect the double hallway doors with the essential functions of his job. If restroom access was the concern, the Army resolved it by installing an opener on an alternate door, which gave Swain access to a different men's restroom.

Swain further alludes to a breakdown in communication, which is a relevant consideration when assessing whether there was a failure to accommodate—an employer cannot simply ignore an employee's request. But a "breakdown of [the] interactive process [does not] render an otherwise reasonable accommodation unreasonable." *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000). The process may not have worked as quickly as Swain desired, but the Army eventually followed through on installing the door openers.

**B**

Swain also alleges disparate treatment. To prove a claim of disability discrimination under the Rehabilitation Act, a plaintiff must show that: (1) he is disabled, (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) he suffered an adverse job action "solely by reason of … his disability." 29 U.S.C. § 794(a); *see also Felix v. Wis. Dep't of Transp.*, 828 F.3d

560, 568 (7th Cir. 2016). The "solely by reason of" causation standard is stricter than the causation standard in Title I of the ADA, which the Rehabilitation Act otherwise incorporates for its liability standards. 29 U.S.C. § 794(d); *see also Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021)[4]; *Brumfield,* 735 F.3d at 630. We assume for present purposes that denial of overtime is an adverse employment action, *see Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007), and it is undisputed that Swain had a disability.

The Army defends its overtime decision by claiming Swain's medical limitations prevented him from performing the overtime work. Although the Army presents this argument as a nondiscriminatory reason for its employment action, its substance challenges Swain's ability to perform the overtime work with or without a reasonable accommodation, i.e., whether Swain was an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a).

One might assume that if Swain performed the essential functions of a tool attendant during regular work hours, he could similarly do so during overtime hours. But the record shows that the Army assigned only one tool attendant per overtime shift. This is pertinent because, during Swain's

---

[4] In *Conners*, we stated that the Rehabilitation Act's causation standard contrasts with the ADA's, "which requires only that the plaintiff's disability be a reason for the challenged action." 984 F.3d at 1260. *Conners* referenced Title II of the ADA, *id.*, but the Rehabilitation Act incorporates Title I, 29 U.S.C. § 794(d), and they contain different language. *Compare* 42 U.S.C. § 12112 ("on the basis of"), *with id.* § 12132 ("by reason of"). Neither Title I nor Title II employs the phrase "solely by reason of," though, so the general observation that the "Rehabilitation Act has a stricter causation requirement," remains true. *Conners*, 984 F.3d at 1260.

regular shift, other employees assisted him by lifting heavier objects—a form of reasonable accommodation an employer can make. 42 U.S.C. § 12111(9) (listing "job restructuring" as a possible accommodation); *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 & n.3 (7th Cir. 2013).

Just so, it is not reasonable for an employer to assign essential functions to other employees. *Majors*, 714 F.3d at 534. So, if lifting objects more than ten pounds was an essential function of a tool attendant, the Army was not obligated to assign a second overtime worker to assist Swain. Circumstances were different during regular hours, though, because essential functions may be shared among employees. *Id.* at 534 n.3 ("[W]hen employees working in teams are able to share duties among themselves, … such sharing might be a form of reasonable accommodation."). In other words, an accommodation that is reasonable during normal work hours may not be reasonable during overtime hours. That is the case here. The Army reasonably believed that Swain could not perform the essential functions of a tool attendant and justifiably withheld overtime assignments on that basis.

Even if lifting heavier objects was a nonessential function—in which case Swain was an "otherwise qualified individual"—he must prove that the Army denied him overtime work "solely" because of his disability. 29 U.S.C. § 794(a). The Army believed that Swain's medical restrictions, without assistance from other employees, precluded him from performing his duties in the overtime context. To overcome this defense, Swain must demonstrate that the Army's proffered reason was pretextual, which "requires more than just faulty reasoning or mistaken judgment on the part of the employer."

*Graham v. Arctic Zone Iceplex*, *LLC*, 930 F.3d 926, 929 (7th Cir. 2019) (internal quotation marks omitted).

Swain insists he was previously assigned overtime hours alongside another employee, and thus the Army's decision to deny him overtime was baseless. But his own submissions are unclear on this. In his brief, Swain claimed that, before January 2017, he had worked overtime with a coworker, yet he asserted in a sworn declaration that he did not work overtime before January 2017. In any event, the number of employees needed for an overtime shift may change. Without evidence of bad faith, the Army's policy of assigning one tool attendant to an overtime shift is a reasonable business decision, not evidence of pretext.

Swain tries to show pretext in one other way. He argues that similarly situated employees were given overtime while he was not. Specifically, he claims that two employees with respective weight restrictions of five and fifteen pounds were permitted to "work overtime hours in the tool crib alone in November 2017 and August and September 2018." The Army explains that one of those individuals was a contract employee who did not reveal any medical limitations to the Army, if he had any. And the other had a limitation restricting him from a particular piece of machinery, but there is no evidence that using that piece of machinery was an essential function of his job. In addition, Swain's supervisor, who was responsible for assigning overtime work, testified that he was unaware that either individual had any restrictions. No reasonable juror could infer pretext from these two undeveloped comparators, especially given the Army's unrebutted response.

In short, Swain cannot persuade a reasonable juror that the Army denied him overtime work solely because he was disabled. To the contrary, the record reflects that as soon as his medical limitations were lifted, the Army placed him on the overtime list.

*          *          *

For these reasons, we conclude that the Army met its obligations under the Rehabilitation Act and AFFIRM the decision of the district court.