In the

# United States Court of Appeals
## For the Seventh Circuit

————————————

No. 24-2221

DAVID P. BOURKE,

*Plaintiff-Appellant,*

*v.*

DOUGLAS A. COLLINS,
Secretary of Veterans Affairs,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-03164 — **Matthew F. Kennelly**, *Judge.*

————————————

ARGUED MAY 13, 2025 — DECIDED JULY 7, 2025

————————————

Before EASTERBROOK, BRENNAN, and PRYOR, *Circuit Judges.*

BRENNAN, *Circuit Judge.* David Bourke was a disabled employee of the U.S. Department of Veterans Affairs. The VA granted Bourke's request for a reserved parking space outside the building where he worked to reasonably accommodate his disability. When the COVID-19 pandemic began, that accommodation no longer comported with the VA's prevention measures. So, the VA offered Bourke an alternate

accommodation that also complied with its efforts to hinder the disease's spread.

Bourke declined the alternate accommodation and sued, alleging a violation of the Rehabilitation Act of 1973. He believed it put his mobility scooter at risk of being stolen. The district court disagreed and entered summary judgment for the VA. Because no reasonable jury could conclude that the VA failed to offer Bourke a reasonable accommodation, we affirm.

## I

### A

Bourke worked in Building 200 of the Edward Hines Jr. VA Hospital in Hines, Illinois. He is disabled and must use a cane to walk even short distances. At work, Bourke used a mobility scooter. In 2019, the VA granted Bourke's request for a reserved parking spot behind Building 200 to shorten his walk to a locked room where he kept his scooter overnight (though whether in a "locked office" or "behind locked doors" is disputed). Each day, Bourke parked in his reserved spot, entered Building 200's rear entrance, and retrieved his scooter.

In March 2020, in response to the COVID-19 pandemic, the VA implemented several precautionary measures. One required employees to enter through designated entrances and receive screening for symptoms. Bourke's usual entrance at the rear of Building 200 was not among those approved.

Yet Bourke continued to use that rear entrance, retrieve his scooter, and proceed to the designated screening area. Soon after, the hospital announced that rear entrance would be locked. Bourke then requested a new accommodation: a parking space near the approved emergency room entrance to

Building 200. Important to Bourke was that his scooter remain stored in a locked room at night.

The VA believed Bourke's request was unreasonable. There were no suitable storage rooms with locking doors near the emergency room. And for Bourke to park near the approved emergency room entrance, an unassigned handicap spot would have to be redesignated, decreasing the number of available handicapped spaces. Further, the VA was concerned it could not stop people from parking in the space reserved for Bourke.

So, the VA offered Bourke an alternate accommodation— a designated parking spot near Building 1. That building had an approved entrance with screening and a storage space for his scooter in the Patient Advocate Department. Although the storage space did not have a locked room, the space was secluded, outside of public view, and saw little to no activity at night. Other employees also stored their scooters there. But Bourke rejected the accommodation because he thought his scooter could be stolen if not stored in a locked room.

Instead, Bourke parked in a handicapped spot near another building. He walked to an approved entrance and then to his scooter, which he stored in the original secured area near his workstation. He did this for several weeks until the hospital relaxed its COVID-19 restrictions and unlocked Building 200's rear entrance. Bourke testified that those days of walking exacerbated his hip pain.

**B**

Bourke exhausted his administrative remedies and sued the Secretary of Veterans Affairs in his official capacity under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. He

claimed the VA failed to reasonably accommodate his disability by rescinding his previous reasonable accommodation. He sought damages for the pain and suffering attributable to his extra walking.

After discovery, the parties filed cross-motions for summary judgment. In dispute was whether the VA reasonably accommodated Bourke's disability. The district court reasoned that the alternate accommodation the VA offered, the parking space in front of Building 1, was not too far from the scooter storage space in the Patient Advocate Department. In addition, the court found no evidence of a significant risk that Bourke's scooter was likely to be stolen. And it rejected Bourke's argument that the VA cannot alter the reasonable accommodation it provides to an employee in response to a changing circumstance. The court granted the VA's summary judgment motion, so Bourke appeals.

At oral argument before us, a question arose whether sovereign immunity barred Bourke's recovery. The parties had not addressed the topic, so we requested further briefing on its applicability. In their supplemental briefs, the parties agreed that sovereign immunity did not apply here.

The Supreme Court in *Lane v. Pena* held that sovereign immunity had not been waived for a claim under 29 U.S.C. § 794(a) that the Rehabilitation Act had been violated. 518 U.S. 187, 192–93 (1996). Section 794(a) prohibits disability discrimination in programs receiving federal funding or programs conducted by federal agencies. *Id.* at 189.

By contrast, § 791 of the Rehabilitation Act "prohibits discrimination on the basis of disability in employment decisions by the Federal Government." *Id.* at 193. And "Congress has

waived the Federal Government's sovereign immunity from compensatory damages claims for violations of § 501 of the Rehabilitation Act, 29 U.S.C. § 791." *Id.; see also Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019) ("Sansone then sued the [Postal] Service under the Rehabilitation Act, 29 U.S.C. § 791.").

The parties agreed that Bourke's claim was a § 791 claim, despite the district court's statement in its summary judgment decision that "Bourke alleges that the VA violated the Rehabilitation Act's nondiscrimination provision, 29 U.S.C. § 794." We adopt the parties' agreement, so sovereign immunity does not bar Bourke's possible recovery. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

## II

We review a district court's grant of summary judgment de novo, construing the facts in the light most favorable to Bourke and drawing reasonable inferences in his favor. *Bich v. WW3 LLC*, 130 F.4th 623, 629 (7th Cir. 2025).

## A

The Rehabilitation Act requires federal employers to reasonably accommodate the disabilities of their qualified employees. *McCray v. Wilkie*, 966 F.3d 616, 620–21 (7th Cir. 2020). The Act incorporates the liability standards of the Americans with Disabilities Act of 1990. *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021).

Bourke's failure-to-accommodate claim requires him to show (1) the employer knew of his disability, (2) he is an otherwise qualified individual, and (3) the employer failed to reasonably accommodate his disability. *Swain v. Wormuth*, 41 F.4th 892, 897 (7th Cir. 2022). All agree he meets the first two

elements. At issue is whether the VA's proposed accommodation reasonably accommodated Bourke's disability.

A reasonable accommodation under the Act "enable[s] the employee to perform the essential functions of the job." *Id.* at 898. This means the employer "does what is necessary to allow the employee to work in reasonable comfort." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 840 (7th Cir. 2012). Reasonable accommodations "are all about enabling employees to work." *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1162 (10th Cir. 2014) (Gorsuch, J.).

Recall that the VA offered Bourke an alternate accommodation that complied with its COVID-19 prevention efforts. In the district court, Bourke argued that accommodation was unreasonable for two reasons: the parking space was too far to walk, and he had no place to safely store his scooter. Before us, Bourke argues only the latter. So, the former challenge has been "forfeited, if not waived" because it does not appear in Bourke's opening brief. *Dotson v. Faulkner*, 138 F.4th 1029, 1031 (7th Cir. 2025).

The VA submits that no reasonable jury could conclude that the alternate accommodation was unreasonable because Bourke's scooter was not stored safely. We agree. The proposed storage area was out of view from the public, not in a common area, and saw relatively little after-hours traffic. Other employees stored their scooters there without problems. A key was even left overnight in another scooter and that vehicle was not stolen. Considering the pandemic-related constraints on the VA at the time, this alternate accommodation was reasonable. *See, e.g., Yochim v. Carson*, 935 F.3d 586, 591 (7th Cir. 2019) (holding that several alternative

accommodations were reasonable because they "reasonably addressed" the disabled plaintiff's needs).

Bourke insists this alternate accommodation was unreasonable. He requested a locked storage area, as he had enjoyed in his previous accommodation. But "an employer is not required to provide the particular accommodation that an employee requests." *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000). An employer must only provide a reasonable accommodation, not a perfect one. Bourke said he heard that a scooter was stolen from another part of the hospital. He also contends his scooter was at greater risk of theft because of its design. But as the district court correctly concluded, Bourke's concerns are speculative. Those do not create a genuine issue of material fact. And we do not read the district court's phrase "significant risk" as creating a higher standard of proof.

Another factor in our inquiry is whether the employer and employee engaged in an "interactive process to determine a reasonable accommodation." *Sansone*, 917 F.3d at 979 (quoting *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998)). There was some dispute about whether the VA engaged in that process with Bourke. After the VA unilaterally withdrew Bourke's accommodation, he requested a new one. The VA then offered an alternate accommodation, which Bourke declined. So, although there was a back-and-forth between the parties, viewing the evidence in favor of Bourke, as we do, the VA's unilateral retraction of Bourke's accommodation without conferring with him caused the interactive process to break down. Still, that alone is not enough to prove a violation of the Rehabilitation Act. Courts focus on the resulting accommodation, not the process. *Connors*, 984 F.3d at 1262

("[B]ecause the interactive process is not an end in itself, we have repeatedly held that the mere failure to engage in the process cannot give rise to a claim for relief.").

We agree with the district court that the scooter could be stored safely in an area with other scooters in a low-traffic area. Bourke could enter the building, get on his scooter, receive COVID screening, and drive to his workstation. Even if the VA acted too quickly and without conferring with Bourke, the result was a reasonable, alternate accommodation during a pandemic.

**B**

As Bourke sees it, the burden is on the VA to show that continuing to provide its original accommodation would cause it an "undue hardship." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002). To him, the VA should not have revoked his previous accommodation and forced him to restart the accommodation process.

True, we have said "[a]bsent some change in circumstance, an employer may not rescind an accommodation simply because it is inconvenient or burdensome." *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 573 (7th Cir. 2019). An employee there had multiple sclerosis, so American Airlines permitted her to work from home in Chicago. *Id.* at 567–68. The airline later reversed course and required the employee to work in person in Texas, leaving her wholly without an accommodation. *Id.*

But this case is materially different from *Bilinsky*. Here, the VA did not leave Bourke without an accommodation. Rather, Bourke's accommodation was altered to comply with its COVID-19 prevention measures. Even if *Bilinsky* applies, its

rule was that an employer may not rescind an accommodation "absent some change in circumstance." *Id.* at 573. Preventing the spread of a disease amid a pandemic is such a change.

Bourke would have us adopt a new rule: Any time an employer alters an accommodation, for any reason, the employer must show an undue hardship. But "[i]t is an employer's prerogative to choose a reasonable accommodation." *Jay*, 233 F.3d at 1017; *see also Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 680 (7th Cir. 2010) ("An employer need not create a new job or strip a current job of its principal duties to accommodate a disabled employee."). Bourke's proposed rule would strip employers of their power over accommodations. *Cf. EEOC v. Charter Commc'ns, LLC*, 75 F.4th 729, 742 (7th Cir. 2023) (Employers are "not required to bend over backwards to accommodate a disabled employee."). For this reason, like the district court, we decline to adopt Bourke's suggested rule.

Bourke's authority for his position is *Isbell v. John Crane, Inc.* 30 F. Supp. 3d 725 (N.D. Ill. 2014). There, the employer allowed a chemical engineer to arrive late because of a disability. *Id.* at 730. After a change in management, the accommodation was revoked, and she had to arrive at 9:15 a.m. *Id.* at 731. So she sued. *Id.* at 733. The district court framed the issue as not "whether a start time of 9:15 a.m. was reasonable," but "whether it was reasonable for Crane to withdraw that existing accommodation." *Id.* at 734. The court saw no evidence that Isbell's 10 a.m. start time imposed an "undue burden" on Crane. *Id.* Though that framing might support Bourke, *Isbell* did not fully engage with the employer's principal role in the accommodation process. The employer

retains the power to craft the accommodation. *See Jay*, 223 F.3d at 1017. The VA thus could offer Bourke an alternate accommodation because of the COVID-19 pandemic. In any event, *Isbell* does not bind us.

Even if Bourke were correct that the VA must show that his previous accommodation caused it an "undue burden," that showing has easily been made. Bourke's previous accommodation meant he could enter the hospital without any screening, proceed to the secured area to retrieve his scooter, and drive his scooter to the designated entrance for screening, all before being screened. That scenario would frustrate the VA's efforts to prevent the spread of COVID-19 to employees and vulnerable patients.

*              *              *

The beginning of the COVID-19 pandemic changed much, including the accommodation the VA granted to Bourke. To comply with its efforts to prevent the virus's spread, the VA offered Bourke an alternate, reasonable accommodation, and no reasonable jury could conclude otherwise. We therefore AFFIRM the district court's grant of summary judgment.