In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 24-1799

LANITA DOTSON,

*Plaintiff-Appellant,*

*v.*

JAMES FAULKNER,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 20-cv-1767-bhl — **Brett H. Ludwig**, *Judge*.

_____

ARGUED MAY 13, 2025 — DECIDED MAY 29, 2025

_____

Before EASTERBROOK, BRENNAN, and PRYOR, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. While confined at Ellsworth Correctional Institution in Wisconsin, Lanita Dotson was abused by guard James Faulkner. He forced her to perform fellatio two or three times and once choked her into unconsciousness. Faulkner has been convicted of sexual assault and sentenced to 14 years' custody, at least 6½ of which must be served in prison. *State v. Faulkner*, 2022 Wisc. App. LEXIS 797 (Sept. 7, 2022).

In this suit under 42 U.S.C. §1983 Dotson sought damages from Faulkner, Sarah Cooper (the warden), Kalen Ruck (the deputy warden), and Amy Finke (a captain of guards). The district court granted summary judgment in favor of Cooper, Ruck, and Finke, ruling that none of them knew or had reason to suspect that Faulkner posed a danger to prisoners. 2023 U.S. Dist. LEXIS 190498 (E.D. Wis. Oct. 24, 2023). Dotson's appellate brief does not mention Cooper, Ruck, or Finke, so she has abandoned her claims against them, and we have removed them from the caption.

Faulkner did not answer the complaint. The district court entered a default and held a hearing to determine damages. See Fed. R. Civ. P. 55(b)(2)(B). Dotson contended that the assaults reduced her expected income and would require long-term medical expenses. She sought damages to cover these losses, plus pain and suffering; she also requested punitive damages. The district judge awarded $1 million for pain and suffering plus $3 million in punitive damages but found the proof of other loss insufficient. 2024 U.S. Dist. LEXIS 33132 (E.D. Wis. Feb. 27, 2024). Although represented by counsel (Joseph W. Seifert of Milwaukee), Dotson did not introduce any evidence about her anticipated future income—either how much she would have expected to make in the absence of Faulkner's crimes, or how they affected her earning capacity. Counsel did proffer an expert report estimating the expenses that Dotson would incur for mental-health care, but the expert did not testify and the report was not authenticated. Nor did the report reduce future outlays to present value. The district judge generously gave Seifert 14 days after the hearing to fix those problems.

Instead of having the expert authenticate her report through an affidavit or a declaration under 28 U.S.C. §1746, Seifert drafted, and the expert signed, a document that did not satisfy either option. It was not sworn before a notary, and it did not meet the statute, which requires language in substantially this form: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date)." The document that Seifert drafted for the expert says that it is "under penalty of perjury" but does not declare that the report's substance "is true and correct". The judge could not fathom why Seifert failed to copy the statutory words or use a notary. The judge concluded that the document did not comply substantially with §1746.

As for the present-value calculation: Seifert did this himself rather than obtaining the expert's views. He added an annual cost increase of 4.3% while selecting a discount rate of 3%. The result nearly doubled the expert's cost estimate. He did not justify projecting annual cost increases (something the expert had not done) when all the district judge held the record open for was discounting to present value. Nor did Seifert explain how he could be a witness in Dotson's case, or what expertise he had to project medical cost increases or determine appropriate discount rates.

The district judge threw out the additional evidence, observing that Seifert had "failed to comply with basic law on damages and the rules of evidence." 2024 U.S. Dist. LEXIS 33132 at *7. The judge added: "Counsel's submission shows a wholesale lack of care for compliance with" §1746. *Id*. at *8 n.2. This left Dotson with a $4 million award.

Dotson's appellate brief contests these rulings, but the district judge did not abuse his discretion or make a legal error. The brief's main argument is that the district court erred by not finding that Faulkner committed his wrongs in the course of his employment. The goal could be a judgment against the employer under principles of *respondeat superior* or a state law providing indemnification for some adverse judgments. Neither option has good prospects. *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), holds that §1983 does not authorize vicarious liability, and as a matter of Wisconsin's law it is Faulkner who possesses any entitlement to indemnification, given that his employer was the state itself. Wis. Stat. §895.46(1)(a). See *Carlson v. Pepin County*, 167 Wis. 2d 345, 356 (Wis. App. 1992) (§895.46 "does not permit a tort victim to sue the state directly"). More: Faulkner's employer, Wisconsin's Department of Corrections, is not a "person" under §1983 to begin with. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).

But the district court did not consider any of these potential obstacles, because the complaint did not name Faulkner's employer as a party. The result, the judge patiently explained, is that scope of employment "is not before the Court. … Plaintiff never sued Faulkner's employer, so this issue was never litigated." 2024 U.S. Dist. Lexis 33132 at *14–15. Wisconsin is entitled to contest any assertion that Faulkner's criminal acts were within the scope of his employment, but the posture of this litigation has denied it that opportunity. Any declaration about its obligations, in a proceeding to which it is not a party (and so cannot be bound), would be an advisory opinion. About all of this Seifert's brief on appeal says … not one word.

Lawyers who ignore the ground on which a district court acts doom their clients' chances. You cannot persuade a court of appeals that a district judge erred if you fail to engage with the judge's reasons. At oral argument Dotson's lawyer stated that he believes that naming the employer as a party is unnecessary under Wisconsin's law and asked for a chance to file a supplemental brief to address the subject. That request is denied. Even the reply brief would have been too late. Arguments omitted from an opening appellate brief are forfeited, if not waived. *Protect Our Parks v. Buttigieg*, 97 F.4th 1077, 1098 (7th Cir. 2024); *Hackett v. South Bend*, 956 F.3d 504, 510 (7th Cir. 2020); *Cole v. CIR*, 637 F.3d 767, 772–73 (7th Cir. 2011); *Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit* 161 (2020 ed.). We entertain supplemental briefs on questions that appellate judges introduce into a case or issues that arise after the opening brief was filed. But when the district court decides a case on a particular ground, that subject must be addressed in the appellant's opening brief, if appellant wants it reviewed.

Seifert's work in this litigation falls far short of professional standards. Yet he went on the offensive in his appellate brief. While ignoring the ground on which his client lost the scope-of-employment issue, Seifert asserted that "[t]he [district] Judge's unfounded accusations of Attorney Seifert of ethical violations and attempts to deceive the lower court were slanderous and improper and should be stricken from the Record." Seifert does not explain just how we are to "strike" language from the district judge's opinions, which are available to the public via the PACER system as well as Westlaw and Lexis. Are we also supposed to enjoin newspapers from publishing judicial language?

The All Writs Act, 28 U.S.C. §1651(a), permits a court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." We doubt that a Writ of Erasure is "agreeable to the usages and principles of law." Certainly it lacks provenance. Seifert's brief does not cite authority for the relief he seeks; it simply assumes that courts of appeals can blot unwelcome language from district courts' opinions. That is not within our remit.

AFFIRMED